IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MYA SARAY, LLC, | ) |
| | ) |
|         *Plaintiff*, | ) |
| | ) |
| v. | )   Case No. 1:16-cv-00275 |
| | ) |
| SAHNI'S ENTERPRISES, INC., *et al.* | ) |
| | ) |
|         *Defendants*. | ) |
| | ) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S RENEWED FIRST MOTION TO COMPEL**

The Defendants Sahni's Enterprises, Inc., #1 Wholesale, LLC ("#1 Wholesale"), The Hookah Hookup, All Fun Gifts, Inc., and Hookap-Hookah Wholesale & Distributor Inc. (collectively, the "Defendants"), by counsel respond to Plaintiff's Renewed First Motion to Compel (the "Plaintiff's Motion to Compel").  ECF No. 77-79.

**I.     INTRODUCTION**

The Plaintiff is demanding an inspection of #1 Wholesale's warehouse and a retail location for The Hookah Hookup in a blatant effort to add "new" hookah models (or other products) (i.e., models or products not currently among the 16 accused models but that have been commercially available) to the Plaintiff's current accusations and pad its existing damages requests.  Presumably, if the Plaintiff gets its way, it will find at least one "new" model to accuse and then seek to add the model to its list – resulting in an effort to amend its Complaint for the *third time*.

As with other discovery to date in this matter, the Plaintiff is not putting any restrictions on its demand to view and inspect (including taking products out of packaging and taking the

products themselves apart). The Plaintiff does not limit its requests to the accused models, nor does it give any guidance to the scope of its demand. Presumably the Plaintiff's counsel will know "it" when he sees "it" – whatever that "it" may be.[1]

To be clear, neither #1 Wholesale nor The Hookah Hookup is objecting to the Plaintiff inspecting models accused of infringement. Indeed, the Defendants agree that a proper investigation should have been conducted prior to alleging infringement of a product. To that end, #1 Wholesale and The Hookah Hookup offered, in lieu of a facilities inspection, to produce for inspection (at a mutually agreeable location and date) the models currently accused of infringement and even a reasonable number of unaccused models (i.e., five) identified by the Plaintiff that have a sufficient nexus to the accused models. This offer includes the packaging the models are sold in. Instead of accepting this offer, the Plaintiff has persisted with the instant motion to compel an inspection of premises and its demands to inspect a completely unknown and unrestricted number of unaccused models at the premises.[2]

## II.   RELEVANT FACTUAL BACKGROUND

The Plaintiff initiated this action on March 11, 2016. ECF No. 1. Then, prior to effecting service of process, the Plaintiff amended its complaint, entering the First Amended

---

[1] The Plaintiff apparently is of the belief that all hookahs infringe some aspect of its intellectual property. For example, in regard to its various patent claims the Plaintiff never pled a specific feature or attribute of a hookah product that infringes. Rather, it merely supplies a laundry list of allegedly infringing hookahs with no indication of what common feature(s) the Plaintiff asserts infringe its various patents.

[2] A principal of the Plaintiff's company recently conversed with a member of Sahni's Enterprises at a trade show. The Plaintiff indicated that "they don't care" about the case because the lawyer is paid on the outcome of the case.

Complaint on April 8, 2016. ECF No. 7. The First Amended Complaint added two new counts (one of which was legally unsound and was dismissed by Judge Brinkema). Then, the Plaintiff brought a motion for a preliminary injunction, including allegations against two additional hookah models (the "Lisa" and the "Juliana"). ECF No. 16. The Defendants noted during the preliminary injunction that they would "pull" the accused models from sales, and together the Parties came to a Voluntary Stipulation to Maintain the Status Quo – which specifically identified all the models the Plaintiff was accusing. *See* ECF No. 39. On August 15, 2016, after the Parties' Voluntary Stipulation, the Plaintiff sought leave to file its Second Amended Complaint which added one more hookah model in its allegations that had not been in any of the earlier filings with the Court (the "Lydia'"). ECF No. 59-2.

On June 17, 2016, immediately after appearing before Judge Brinkema and at the suggestion of the Defendants' counsel, counsel for the Parties sat down to discuss the case and whether there was any leeway for resolution. At this meeting the Defendants offered to make products or models available for inspection if the Plaintiff could identify what it wanted to inspect. The Plaintiff did not take the Defendants up on this offer. The Plaintiff's counsel clearly remembers this conversation, as it referenced it in an e-mail communication related to the demanded Notices of Inspection. ECF No. 77-2, PageID # 2676. The Defendants' counsel again repeated the offer during the telephone conversation the Parties finally held on the Notices of Inspection.

#1 Wholesale has three "lines" of hookah brands (known as "Elite," "Elate," and "Badshah") which in combination offer more than 220 models of hookahs. *See* Exhibit 1. Currently the Plaintiff appears to be accusing 16 of these models of one or more forms of

infringement. The Defendants have repeatedly offered to make the accused models available for the Plaintiff's inspection. This offer includes the packaging consumers would encounter if they purchase a model. The Defendants are also willing to make a reasonable number (i.e., five) unaccused models available provided the Plaintiff can identify the unaccused models based on some reasonable nexus between the accused and unaccused models.

### III. ARGUMENT

#### A. Applicable Legal Standards

Despite the wide breadth of discovery permitted under the Federal Rules of Civil Procedure, there are limits. One of these limits is a prohibition on "fishing expeditions." In other words, "'Plaintiffs are not entitled to discovery that is only relevant to unaccused products.'" *LifeNet Health v. LifeCell Corp.*, 2014 U.S. Dist. LEXIS 115985, *16 (E.D. Va. 2014) (quoting *Apotex, Inc. v. Mylan Pharms., Inc.*, 2013 U.S. Dist. LEXIS 186937 at *4 (S.D. Fla. June 4, 2013) (citing *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990)). A discovery request is not justified simply because it "'might uncover evidence showing that a plaintiff has a legitimate claim." *Id.* (quoting *Micro Motion*, 894 F.2d at 1327); *see also Apotex,* 2013 U.S. Dist. LEXIS 186937 at *14-15 (finding "no support for Plaintiffs' suggestion that it is entitled to discovery that bears on issues that *could be* in the case, such as infringement of the unaccused products or methods, without showing that the same discovery is relevant to the claims against accused products") (emphasis added). Rather, discovery requests must be relevant to accused products to be generally permissible. *Id.* at *17 (citing *Apotex*, 2013 U.S. Dist. LEXIS 186937 at *4).

The need to show that discovery is relevant to the claims against accused products is "especially true" when a case involves "technology where the infringing products are [] readily identifiable pre-suit." *Apotex*, 2013 U.S. Dist. LEXIS 186937 at *14-15. In *LifeNet* this Court permitted discovery that covered both accused and unaccused products because there was a "nexus" between the two, caused by the plaintiff's limiting of the unaccused products to specific products which fit a definition that closely tracked the properties of the accused products themselves. 2014 U.S. Dist. LEXIS 115985 at *17 and n.7. In other words, in *LifeNet* there was a specific, demonstrated, and definitive connection between the accused and unaccused products, and the products themselves were soft tissue products – a type of technology that is unlikely to be readily identifiable pre-suit.

In regard to inspections specifically, the Fourth Circuit has held that "the degree to which [a] proposed inspection will aid in the search for the truth must be balanced against the burdens and dangers created by the inspection." *Blecher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). An "entry upon a party's premises may entail greater burdens and risks than mere production of documents," and therefore the Court must exercise "precision and care in the formulation of inspection orders." *Id*. at 908, 911.

The Defendants do not disagree with the assertion that for some patent cases the inspection of a facility might be necessary. However, those instances are when the patented claims concern a process or method and the premises are where the process or method is being performed. Indeed, each of the cases relied upon by the Plaintiff (all of which are also from outside this Circuit) concerned an inspection for a claimed method or process. In contrast, here the patented claims are physical products. Actual, tangible "things" (each appearing on the

Defendants' websites) that the Plaintiff can purchase (and has purchased in the past, at least in part), pick-up, and otherwise view in a location outside of the Defendants' facilities. The need for a facility inspection that applies for a method claim simply does not apply for an apparatus claim, particularly when the plaintiff has access to the products its want to inspect in the public sphere.

**B. The Plaintiff's Inspection Demands Are Outside the Bounds of Relevancy and a Proper Discovery Process**

Currently, the Plaintiff is alleging that approximately 6% of the hookah models offered by #1 Wholesale infringe one or more of the Plaintiff's purported rights. In stark contrast, the Plaintiff's Notices of Inspection seek "inspection of **all** tobacco related items and apparatuses." ECF No. 77-22, PageID # 2660 and ECF No. 77-3, PageID # 2664. There is no restriction or qualification in these Notices. Nor does the Plaintiff effectively limit the scope of its request in its Motion to Compel. At best, the Plaintiff states that there is some undefined "profile" and ties this criterion to hookahs that "slavishly copy" the look of the Plaintiff's models. The Plaintiff then posits that "sister products" of the accused models might fit the Plaintiff's infringement theories, but there is no explanation of what a "sister product" actually is. It certainly cannot be the remaining 200 or so hookah models offered by #1 Wholesale or the unaccused products that are "tobacco related items and apparatuses" such as charcoals, tips, grommets, covers, burners, tobacco dispensers, or #1 Wholesale's Glider Bowl. (*See* Exhibit 1, pp. 73-83.)

Interestingly, the Plaintiff *also admits* that "[m]ost of Defendants' hookah are not copies of Mya Saray products." ECF No. 78, PageID # 2684, n.2. Therefore, under what little guidance the Plaintiff has offered, most of the Defendants' hookahs are not among the ambiguous "sister products" the Plaintiff now seeks to inspect and take apart.

The Plaintiff's argument that it must view, remove from packaging, and take apart "all tobacco related items and apparatuses" is *not* a "nexus" establishing relevancy to the claims against the accused models. Even if what the Plaintiff meant by its broad language was "hookahs," it is still not a sufficient nexus, particularly as #1 Wholesale has more than 220 models of hookahs. The Plaintiff has not established a nexus between the accused models and the numerous unaccused models the Plaintiff now seeks to "inspect." Indeed, the whole thrust of the Plaintiff's arguments is that it needs to inspect unaccused models to see if they also infringe something. There is no explanation as to how inspection of the unaccused models is relevant to the Plaintiff's claims against the accused models. As noted by the Court in *Apotex*, "[i]f the Plaintiffs had merely argued that [defendant] should produce [discovery for unaccused products] so that it could obtain information to state a claim for infringement on those unaccused products, the Court could easily deny that request." 2013 U.S. Dist. LEXIS 186937, at *14 (citing *Micro Motion*, 894 F.2d at 1327). In sum, there must be some limit on the Plaintiff's requested discovery. The Plaintiff must have a nexus, one clearly explained, between the accused models and the other models the Plaintiff now wants to dissect, and show that the discovery it seeks of the unaccused models also supports the claims at issue. The Plaintiff has not done this.[3]

The Plaintiff also makes the arguments in its Motion to Compel that an inspection of facilities is needed because there might be some models where some but not all of the individual hookahs of a specific model may infringe (ECF No. 78 PageID # 2694) and there may be

---

[3] Again, even though the Plaintiff has failed to establish a nexus with the accused models, the Defendants are willing to provide a small, reasonable number of unaccused models for inspection as well (such as five). In light of the Plaintiff's admission that most of the Defendants' models are not "copies" of the Plaintiff's models, the Plaintiff should be able to narrow the scope of its fishing expedition to meet this offer.

different designs on some of the "Chic" model of hookahs (*Id.*, PageID # 2688). The Defendants understand each of these arguments to be justifying the Notices of Inspection because the Plaintiff wants to look at each individual hookah (of the same model) to determine whether there is some additional infringement theory the Plaintiff can throw in. Again, there is simply no limit on this argument. Is the Plaintiff really looking to open, to use the Plaintiff's example, each and every package of "Surrender," "Chic," or other model hookahs to inspect each one for possible infringement? Moreover, this "argument" is based purely on attorney conjecture and speculation and is insufficient to support the Plaintiff's Motion to Compel. *See Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*, 2016 U.S. Dist. LEXIS 117319, at *10 (W.D.N.C. Aug. 31, 2016); and *Precision Fabrics Group, Inc. v. Tietex Int'l, Ltd.*, 2015 U.S. Dist. LEXIS 104382, at *10-11 (M.D.N.C. Aug. 10, 2015). On a more fundamental level, the Plaintiff appears to be confusing the Parties' burdens and interests in this matter. If not all of the individual hookahs infringe a patent or trademark, that burden to show the noninfringement is on the Defendants.[4]

The Plaintiff has not established that the inspections at issue are required to support its existing claims in this matter. To the contrary, the Plaintiff's argument appears to be that it was too hard, costly, or burdensome for the Plaintiff to complete its investigation in advance of filing this lawsuit and that it needs this investigation to find more models to accuse and add to the Second Amended Complaint. This is not a good enough reason to shift the burden to the Defendants.

---

[4] Presumably the "Surrender" model which the Plaintiff reviewed must infringe under its theories, as the Plaintiff named the model in its Complaint. As to the "Chic" model with a "fir tree," the Plaintiff has not pled any trademark rights to a fir tree design. Therefore, any hookah models with "fir tree" designs cannot be a basis for additional infringement allegations.

Finally, the Plaintiff argues that its incredibly broad and unfettered investigation is necessary for purposes of settlement because, if the Plaintiff settles based on "inaccurate or incomplete" information, there would certainly be a "next litigation" between the Parties. Again, the Plaintiff seems to have the Parties' burdens and interests confused. Should the Plaintiff or its counsel ever deign to discuss settlement, the Defendants are aware that it is in their best interests to be forthcoming and resolve the dispute in its entirety and that, if they should fail to do so, a further litigation may ensue.

The Plaintiff's Notices of Inspection and the instant Motion to Compel are a thinly veiled effort to accuse "new" models of unaccused hookahs, despite the fact that the hookahs were, and are, publicly available. The desire to add more models in an effort to pad a damages claim is not a proper or permissible use of the discovery process.

### C. The Plaintiff's Inspection Demands Are Burdensome, and a Less Prejudicial Means Exists

As noted *supra* and as repeatedly expressed to the Plaintiff, the Defendants will produce each of the accused models and a reasonable number (e.g., five) of unaccused models, for which there is an articulated nexus to the accused models, for an inspection by the Plaintiff or its counsel. Moreover, the Defendants have issued discovery requests to the Plaintiff related to the production of the Plaintiff's models that are asserted to practice any of the asserted patents or bear any of the asserted trademarks or trade dresses. It would be most efficient for all Parties if counsel agree on a time and place for everyone to do their inspections simultaneously.

In light of the Defendants' offer to make products available for inspection, the burden of requiring an inspection seems particularly exposed. As noted *supra*, #1 Wholesale sells more than just hookahs, and its warehouse includes products other than hookahs. Moreover, the

warehouse consists of pallets of shipping boxes, and while some boxes may be open prior to the inspection, many are not. #1 Wholesale strongly objects to permitting the Plaintiff the opportunity to open these boxes and unpack its warehouse.

If the Plaintiff is permitted to proceed with its demanded inspection, employees of #1 Wholesale (or The Hookah Hookup for that location) will be required to abandon their other duties to assist in a review of the warehouse (or store), and counsel for both the Plaintiff and the Defendants would need to travel from Washington, D.C., to Atlanta. Moreover, #1 Wholesale recently moved into a larger warehouse and has yet to settle fully into the new quarters.[5] The "showroom" that the Plaintiff seems so keen to inspect does not yet exist, and it is not expected to be up and running for approximately a month.[6] To the extent that the Plaintiff is demanding that #1 Wholesale set up all of its offered 220-plus hookahs as well as the other "tobacco related items and apparatuses" in some manner just for the Plaintiff, such a request is unduly burdensome and oppressive. In regard to The Hookah Hookup, having the Plaintiff or its agents paw through the entirety of the store while taking pictures, measurements, and opening products is sure to be at least a distraction (and possibly a deterrent) to customers of the retail store.

### D. There Is No Basis for Requiring an Inspection of The Hookah Hookup

It is entirely unclear why the Plaintiff needs to "inspect" The Hookah Hookup. Indeed, the only mention of the retail location (which is open to the public) in the Plaintiff's Motion to Compel is to state that some of the hookahs displayed there are obstructed. This goes to the Plaintiff's argument that it was just too hard for it to do a pre-suit investigation and that it needs

---

[5] This move occurred prior to the issuance of the Plaintiff's Notices of Inspection.

[6] Counsel recently learned of this fact.

this inspection to add infringement claims for unaccused models. The faults in this argument have been discussed *ad nauseum* above. Indeed, it is apparent that the Plaintiff (or its agent) *was already in* The Hookah Hookup, including possibly pre-suit. ECF No. 77-1, PageID # 2646, para. 8; *see also* ECF No. 59-2, *esp*. PageID # 2418, para. 34. There is zero indication that the Plaintiff (or its agent) was denied any opportunity on this prior investigation or was not able to see the very same signs, packaging, and displays that the ordinary customer would encounter.

## IV.     CONCLUSION

The Defendant has repeatedly offered to make the accused models and their packaging available for inspection to the Plaintiff. The Defendant has also offered to make a reasonable number of unaccused models of hookah, properly identified and with a nexus to the accused models, available for inspection. Anything beyond this reasonable offer is a fishing expedition by the Plaintiff – as can be seen by the broad language of the Notices of Inspection – in an effort to add even more models to its various allegations of infringement and other ills. Each of the unaccused hookahs (or other "tobacco related items and apparatuses") is publicly available, and the Plaintiff has admittedly already been at The Hookah Hookup location it wants to "inspect."

The Plaintiff's Notices of Inspection are outside the bounds of permissible discovery and are unduly burdensome. The burdens of the inspections simply outweigh the degree to which the proposed inspections would aid in the search for truth. This imbalance is further tipped against the Plaintiff's inspections by the existence of the Defendants' reasonable alternative to make models available for inspection. For these and the foregoing reasons, the Plaintiff's Motion to Compel should be denied.

Date:   September 30, 2016                                       Respectfully,


                                                                  /s/
                                                                 Rebecca J. Stempien Coyle  (VSB# 71483)
                                                                 LEVY & GRANDINETTI
                                                                 1120 Connecticut Avenue, N.W., Suite 304
                                                                 Washington, D.C. 20036
                                                                 Telephone (202) 429-4560
                                                                 Facsimile (202) 429-4564
                                                                 mail@levygrandinetti.com

                                                                 **Counsel for the Defendants**

## CERTIFICATE OF SERVICE

I, Rebecca J. Stempien Coyle, certify that on September 30, 2016, I electronically filed the foregoing DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED FIRST MOTION TO COMPEL by using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Mr. M. Keith Blankenship
>DA VINCI'S NOTEBOOK, LLC
>10302 Bristow Center Drive, No. 52
>Bristow, Virginia 20136
>keith@dnotebook.com

>/s/
>Rebecca J. Stempien Coyle  (VSB # 71483)
>Counsel for the Defendants
>LEVY & GRANDINETTI
>1120 Connecticut Avenue, N.W., Suite 304
>Washington, D.C. 20036
>Telephone (202) 429-4560
>Facsimile (202) 429-4564
>mail@levygrandinetti.com