**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**MYA SARAY, LLC**

               Plaintiff

    v.

**SAHNI'S ENTERPRISES, INC.,**

**Et al.**

               Defendants

Docket No. 1:2016cv275

---

**PLAINTIFF MYA SARAY, LLC'S BRIEF IN SUPPORT OF ITS**
**THIRD MOTION TO COMPEL DISCOVERY**

## INTRODUCTION

Mya Saray relies on its regional distributors to dole out its high-end hookah products ("MYA hookahs") among retail stores. Its Georgia distributor, #1 Wholesale, Inc., ("One Wholesale"), aspiring to be more than simply a distributor, created three brands, "Elite," "Elate," and "Badshah" (hereafter, "OW Brands"), to sell hookahs imported from abroad.  The OW Brands include at least nine hookahs that are knock-offs[1] of Mya Saray's hookahs, including one hookah that copies both the name and product design of the Mya Saray hookah.  Sahni's Enterprises, Inc. ("Sahni") imports the hookahs that One Wholesale distributes throughout the south and Colorado, including to defendants The Hookah Hookup ("Hookah Hookup"), All Fun Gifts, Inc. ("All Fun") and Hookap-Hookah Wholesale & Distributor ("Hookap Hookah").  One Wholesale acquires its knock-offs from foreign manufacturers specializing in the creation of forgeries of high-end products.

One Wholesale once ordered hookahs in significant quantities from Mya Saray, but as it acquired knock-offs, it replaced the genuine products with knock-offs.  Retail stores, including Defendants, intermingle the OW Brands knock-offs among genuine Mya Saray hookahs.  All Fun once sold knock-offs, agreed to stop, and now once again sells the same knock-off model.

Copying Mya Saray's hookahs to dupe consumers is only the opening act of Defendants' freeriding drama.  In copying MYA hookah styles, they also copied functional aspects of Mya Saray's hookahs, which are protected by numerous patents.  To eliminate any uncertainty as to Defendants' intent, they regularly depict photographs of MYA hookahs in advertising and publicizing their knock-offs.  In some instances Defendants' retain the MYA logos in these

---

[1] Throughout this brief, "knock-off" is used in the non-legal sense of a product that is an indistinguishable copy of another well-known product. A knock-off of a registered trademark is a counterfeit.

[2] Decl. pp. 34 (Brianna), 35 (Chic), 37 (Jannat and Jay), 54 (Sweep and Swirl), 99 (Subzero)

advertisements, in other instances Defendants' (poorly) edit the photographs to remove MYA trademarks and insert their own.

Initial Disclosures for the present action were due on August 1, 2016, and Mya Saray immediately served its discovery on that date.  Defendants' responses to the discovery were evasive and perfunctory.  All Fun at times provided legitimate answers, but One Wholesale, Sahni, and Hookah Hookup ("Sahni Confederacy"), who are all under common ownership of Gary and Winnie Sahni, made wholly non-credible claims.

Congress suggests that counterfeiters during Lanham Act litigation will often behave as counterfeiters.  *See* S. Rep. No. 98-526, at 2-3 (1984).  Nothing comes easy; records are withheld and answers are evasive.  Defendants have kicked up a fantastic cloud of dust through which answers are ambiguous and Defendants strain to find ways to deny answering questions and producing documents. The undersigned can count on one hand the Interrogatories where Defendants failed to object to undue burden and breadth.  No one explanation was ever tendered. Defendants' objections to relevance seem to be haphazard and illogical.  Defendants' answers give the impression that it need only provide "smoking guns."  If one were to attempt to reverse engineer the Defendants' business processes purely on the basis of its discovery assertions, one would conclude:

- that the Sahni Confederacy has never communicated with any outside entity throughout the entirety of its business life (because it has identified and produced no communications);
- that the Sahni Confederacy has never sold or shipped a hookah (because it has identified and produced no business or sales records, and expressed dismay that Mya Saray assumed that it would retain business records);
- that the foreign counterfeit factories and the Sahni Confederacy telepathically agreed on every design, shipment detail, product, product features, and price (because it has identified and produced no communications between itself and the foreign factories that supply its white labeled knock-offs);
- that the Sahni Confederacy does not know the prices or availability of its own hookahs (because the Sahni Confederacy has produced no price sheets for its sale and distribution

of hookahs throughout the entire life cycle of sales, from receipt of import (through One Wholesale) to sale to a consumer (through Hookah Hookup));

- the Sahni Confederacy has no employees (because the Sahni Confederacy has produced no paperwork for any sales staff or listed any employees);
- that Hookah Hookup generates no business paperwork, but retains all business records for seven year.
- no one has ever paid the Sahni Confederacy for a hookah (despite the fact Sahni's import records detail that it has imported hookahs with a shelf value of well over one million dollars).
- that Defendants packaging was the result of spontaneous creation without any input from Defendants or permissions from its foreign manufacturers (because Defendants have no master file from which its packaging is printed, even though Defendants use several distinct sources of manufacturing).

This summarizes what Defendants expect Mya Saray and this Court to believe.  Defendants' objections were sweeping and frivolous, and Mya Saray asks that this Court strike all of them – unless specifically noted otherwise in this brief.  Facially, this may sound extreme, but for Defendants that 'shotgun' objections without a single explanation, invent objections, and apply rulings that this Court never issued, there is little alternative.


## STATEMENT OF PURPOSE

This motion seeks two outcomes, one for All Fun and one for the Sahni Confederacy.  All Fun on the whole provided satisfactory answers and production, but obscured its answers in a mire of illegitimate objections.  Mya Saray seeks to have All Fun answer without such objections, and where noted, provide proper responses. The Sahni Confederacy evaded all attempts at providing discovery, in terms of both answers and objections. Mya Saray seeks to have the Sahni Confederacy provide discovery or affirmatively state that it lacks answers and documents. The Sahni Confederacy's discovery production was so flimsy for a multi-million dollar hookah sales organization, that it would be easier to characterize the discovery responses

in terms of what was produced: approximately 240 pages, 188 of which are catalogues and website printouts, and approximately of 35 pages of redacted import records.

**STATEMENT OF FACTS**

When Lewis Carroll first published *Alice in Wonderland* in 1865, the family venture that would become Mya Saray was in its second year of the hookah business. <u>Dkt. No. 13-1, Decl. M. Badawi, par. 3</u>. Mya Saray is the world's largest hookah company and it designs every hookah model in its MYA brand. <u>Decl. M. Badawi, pars. 5, 26</u>. Mya Saray's hookahs are sold under its MYA trademark, and are well-



known to be a premier brand based on exceptional materials and functionality. <u>Decl. M. Badawi, pars. 5-8</u>; and *see generally* <u>Dkt. No. 13-5, Decl. R. Farran, Dkt. No. 13-6, Decl. S. Boutros, Dkt. No. 13-4, Decl. A. Sahib.</u> Mya Saray relies on regional distributors for distribution of its hookah products throughout the United States.

One Wholesale, from 2007 to 2015, was a regional distributor of tobacco products for Mya Saray, and from its Georgia base has distributed over 32,000 MYA hookahs and accessories throughout the eight-year relationship. <u>Decl. of M. Badawi, par. 19</u>. At some point unknown to Mya Saray, One Wholesale began to acquire hookahs identical to select MYA hookahs and began to sell these knock-offs rather than the MYA hookahs that they replicate. John Doe(s), principally in China, have assembly lines dedicated to providing MYA knock-offs with agents standing by to assist with their importation. <u>Decl. of M. Badawi, par. 15</u>. The MYA brand is the world's most counterfeited hookah brand; and the MYA QT is the world's most counterfeited hookah. <u>Decl. of M. Badawi, pars. 13(d), 26</u>.

Sahni is a company specializing in acquiring and importing products into the United States.  Decl. H. Badawi, par. 6. Sahni owns One Wholesale, and as the import arm of the Sahni business constellation, presumably imports hookahs to One Wholesale. Decl. H. Badawi, par. 6. One Wholesale offers hookah products and accessories through its three house brands, that constitute the OW Brands. Decl. H. Badawi, pars. 5-6.

Mya Saray owns registered trademarks for MYA (in all forms), MYA (as stylized), as well as for the product design of the QT hookah.  Dkt. 59-2, Complaint (2nd. Amd.), par. 11, 15. Mya Saray also owns multiple common law trademarks, including the hookah product name CHIC ("CHIC") and its swirl logo ("MYA Swirl Logo"); as well as the product design of the following hookahs: BAMBINO, VENTO, GELATO, and CHIC. Complaint (2nd. Amd), pars. 15-20; and Decl. M. Badawi, pars. 10-14, 27; and *see generally* Decl. R. Farran, Decl. S. Boutros, Decl. A. Sahib. In supplying the OW Brands, John Doe(s) manufacture, Sahni imports, and One Wholesale distributes: a 'Jay' and 'Jannat' hookah that are knock-offs of the MYA QT hookah; a 'Brianna' hookah that is a knock-off of the MYA BAMBINO hookah; a 'Subzero' hookah that is a knock-off of the MYA VENTO hookah; a 'Chic' hookah that is a knock-off of the MYA CHIC hookah; and a 'Sweep' and 'Swirl' hookah that are knock-offs of the MYA GELATO hookah.  Complaint (2nd. Amd), pars. 28-32; and Decl. H. Badawi, pars. 4-5[2].  The Sweep, Swirl, Lisa, Juliana, and Chic hookahs bear the MYA Swirl Logo.  Complaint (2nd. Amd), pars. 20, 28-32, 43; and Decl. of H. Badawi, par. 5[3].  Product catalogs and advertising for the OW Brands depict the OW Brands Chic with MYA logos.  .  Complaint (2nd. Amd), pars. 28-32; and Decl. of H. Badawi, par. 5[4].  The OW Brands Chic as purchased lacked the Swirl Logo; instead it bore a cedar tree.  Decl. of H. Badawi, par. 4(d). Defendants' catalogs and

---

[2] Decl. pp. 34 (Brianna), 35 (Chic), 37 (Jannat and Jay), 54 (Sweep and Swirl), 99 (Subzero)
[3] Decl. pp. 35 (Chic), 38 (Lisa), 42 (Juliana), 54 (Sweep and Swirl)
[4] Decl. p. 35 (Chic)

advertising purporting to depict the OW Brands Subzero, including those of One Wholesale and Hookap Hookah, do not display the Subzero at all; instead, they show a MYA VENTO altered to obscure MYA logos. Decl. of H. Badawi, par. 5[5]; Dkt. No. 11-3, Expert Declaration of G. Reis.

The OW Brands also includes a Jamila hookah.  The Jamila hookah pictured on the face of its packaging is not the hookah within the packaging.  Instead, the Jamila box contains just another QT knock-off.  *See generally* Dkt. No. 11-2, Decl. D. Blankenship.

Sahni purports to own Hookah Hookup, a large regional retailer of tobacco products. Decl. H. Badawi, par. 6. With the exception of the Jamila, all OW Brands specimens depicted in this brief were purchased from Hookah Hookup.  Decl. H. Badawi, par. 3. Knock-offs are displayed without packaging and boxed only upon purchase.  Decl. H. Badawi, par. 3.

All Fun is a regional distributor of novelty, and other, products in North Carolina.  In 2011, Mya Saray learned that All Fun was selling a knock-off of the MYA QT hookah. When apprised, All Fun agreed to cease selling the knock-off, and in return, Mya Saray would forbear legal action. In late 2014, Mya Saray noticed that All Fun was *once again* selling a knock-off of the MYA QT hookah.  Mya Saray *once again* asked them to cease selling the knock-off, and All Fun stopped.  In late 2015, Mya noticed that All Fun was *once again* selling a MYA QT knock-off.  The QT knock-off sold in 2014-15 was the OW Brands Jannat.  Decl. M. Badawi, par. 29.

---

[5] Decl. p. 99 (Subzero)

<u>**ARGUMENT**</u>

**I.  DEFENDANT'S DISCOVERY RESPONSES ARE UNRESPONSIVE**

**A.      STANDARDS OF LAW**

**1.  The Bounds of Procedure of Discovery**

The Federal Rules provide that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed.R.Civ.P. 26(b)(1). The Rules further give courts the authority to "order discovery of any matter relevant to the subject matter involved ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

It has been repeatedly held that the "discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). However, the discovery sought must be relevant. Fed.R.Civ.P. 26(b)(1); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) (stating that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied").  The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence. Fed.R.Civ.P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In striking the appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir.1996).

Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. *Hansel v. Shell Oil Corporation*, 169 F .R.D. 303 (E.D.Pa.1996). Gamesmanship to evade answering as required is not allowed. *U.S. v. Marshall*, 132 F.3d 63, 69 (D.C.Cir.1998); *Kalejs v. INS*, 10 F.3d 441, 463 (7th Cir.1993); *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir .1988). The party opposing a motion to compel bears the burden of showing why it should not be granted. *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D.Pa.1980); *Rogers v. Tri-State Materials Corp.*, 51 F.R.D. 234, 247 (N.D.W.Va.1970).

## 2.     Overly Broad

Rule 34 provides that a request must describe with reasonable particularity each item or category of items to be inspected. Fed.R.Civ.P. 34(b)(1)(A). Courts may find that a request is overly broad when it is couched in such broad language as to make deciding which of numerous documents may conceivably fall within its scope to be an unreasonably arduous task. *General Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 641 (D.Kan. 2003). A party resisting discovery on the basis that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *Id*. at 640. "Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." *Momah v. Albert Einstein Medical Center*, 164 F.R.D. 412, 417 (E.D.Pa. 1996)(citations omitted). When Defendants objected on the basis of breadth without ever citing a basis, the objection is legally deficient and should be struck.

## 3.     Undue Burden

Simply "[I]ntoning the 'overly broad and burdensome' litany, without more, does not express a valid objection." *F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 675 n. 4  (N.D. Fla. 2013) *See Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 515 (D.Minn.1992). Court's typically treat them as if they were not expressed at all.  *Id.* ("[T]he form boilerplate objections…are nullity.")   When relevant, the fact that discovery will be burdensome and expensive is not in itself a reason for discovery which is otherwise appropriate. *See U.S. v. Nysco Labs., Inc.*, 26 F.R.D. 159, 161–62 (E.D.N.Y.1960) and *Rogers v. Tri–State Materials Corp.*, 51 F.R.D. 234, 245 (N.D.W.Va.1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").The burden is on the objecting party to meet his burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is ... overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984).   When Defendants objected on the basis of burden without ever citing a basis, the objection is legally deficient and should be struck.

### 4.    Ambiguity

Rule 34 states that a document request "must describe with reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P. 34(b)(1)(A). The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not. *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D.W.V.2000).   Therefore, the party requesting the production of documents must provide

sufficient information to enable the party to whom the request is directed to identify responsive documents. *Id.* (*citing Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C.1992)). A party that objects to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. *Payless Shoesource Worldwide, Inc. v. Target Corp.*, 237 F.R.D. 666, 674 (D.Kan. 2006). A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases, and if necessary to clarify its answers, and may include any reasonable definition of the term or phrase at issue. *Id*. at 674-75. A respondent that does not seek clarification or indicate the unclear aspects of the requests waives its objection. *DL v. District of Columbia*, 251 F.R.D. 38, 47 (D.D.C. 2008). When Defendants objected on the basis of ambiguity for words and phrases that are facially clear, Defendants' objections are legally deficient and should be struck.

### 5.    Relevance

Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted. *Carefirst Of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 124 (M.D.N.C. 1989). The scope of discovery must be broad in order to provide both sides with all the information necessary for proper and full litigation of all the relevant issues, as well as to eliminate surprise and to facilitate settlement. *Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947).

Rule 26(b)(1) provides, in part, that discovery may be obtained "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

*Buffington v. Gillette Co.*, 101 F.R.D. 400, 401 (D.C.Okl. 1980).  Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. *Id.*; *Miller v. Doctor's General Hospital*, 76 F.R.D. 136 (W.D.Okl. 1977); *Biliske v. American Live Stock Insurance Co.*, 73 F.R.D. 124 (W.D.Okl. 1977); *Detweiler Bros. Inc. v. John Graham & Co.*, 412 F.Supp. 416 (E.D.Wash. 1976); *U.S. v. Int'l Business Machines Corp.*, 66 F.R.D. 215 (S.D.N.Y.1974). Discovery rules are to be accorded a broad and liberal treatment. *Schlagenhauf v. Holder*, 379 U.S. 104 (1964); *Hickman v. Taylor*, 329 U.S. 495 (1947); *Barnett v. Sears, Roebuck and Co.*, 80 F.R.D. 662 (W.D.Okl. 1978). Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action. *Miller v. Doctor's General Hospital, supra*; *Marshall v. Electric Hose and Rubber Co.*, 68 F.R.D. 287 (D.Del. 1975). When Defendants objected on the basis of relevance without ever citing a basis, the objection is legally deficient and should be struck.

### 6.    Interrogatory Answers

Each interrogatory must be answered separately and fully in writing under oath. In the interest of narrowing the issues and ascertaining the facts relevant thereto, a court should not permit answers to interrogatories that are incomplete, inexplicit, and unresponsive. *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 140 (D.C.Okl. 1977). If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information. *Int'l Fertilizer & Chemical Corp. v. Brasileiro*, 21 F.R.D. 193, 194 (S.D.N.Y. 1957) (*citing* 3 Moore,

Federal Practice, Par. 33.26 at p. 2331 (2d ed. 1950)). Dependent upon the circumstances, "evasive or incomplete answers are tantamount to no answer at all." *Cf. Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976); *see also Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1260 (Fed.Cir. 1985) (rejecting the argument that interrogatory answers stating "unable to respond" was a response by which the party could avoid the sanction provisions of Rule 37(d)). Furthermore, a party may not make unilateral decisions to narrow the scope of discovery from the scope defined by the seeker of discovery. *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 611 (D.Neb. 2001) *citing Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 42, 45-6 (D.D.C. 1984).

### 7. Duplication

The proper response to a discovery request that "duplicates" prior subject matter is not to object on the basis of duplication, but rather reference the previously-disclosed items. *Alexander*, 194 F.R.D. at 302. "By simply objecting to the plaintiffs' request without specifically referring to any documents already produced or describing the relevant search already performed, [Defndant] has not met her burden of demonstrating that this request is in fact "unreasonably cumulative or duplicative." *Id*. To the extent that there is any difference is the scope of the discovery request, a discovery request cannot be said to be duplicative. *Id*. When Defendants objected on the basis of duplication when there is a difference in scope, rather than actual duplication, the objection is legally deficient and should be struck.

### 8. Interference with Relationship

The possibility that Plaintiff may interfere with a relationship of plaintiff is not a known basis of objection. The closest potential basis of objection is based on "annoyance and

harassment."   When Defendants objected on the basis of interference with relationship, the objection is legally deficient and should be struck.

### 9.     Privacy

Defendant objects on the basis of the privacy of its employees.   This is not a recognized basis of objection, and if it were, it would nonetheless be meritless, as (i) a protective order has been entered, and (ii) the information requested is not sensitive.   Information that it is both highly sensitive and private may be shielded from discovery.   *See McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 252 (E.D.N.C. 2005)(Although contact information may not be appropriately shielded from discovery, social security numbers may be.). When Defendants objected on the basis of the privacy of employees, the objection lacks a foundation due to the existence of a protective order.

### 10.     Presupposing this Court's Application of Defendant's Legal Theories

Defendants object to answering many of the discovery requests on the theory that "laches" prevents Plaintiff's ability to inquire into certain areas of information.   In raising the objection that "laches" may narrow the scope of Defendant's discovery responses, Defendants' presuppose that this Court has endorsed the Defendant's legal theories.   This is all without the benefit of hearing or court judgment.   A defendant that refuses to answer discovery based on the application of a legal defense usurps the role of judge.   *But see Tidler v. Eli Lilly & Co.*, 95 F.R.D. 332, 334 (D.D.C. 1982)(A court may allow a party to refuse to respond to discovery when the proponent's legal theory involved a "radical departure" from settled law.). Any objection where the Defendant presupposes a ruling by this Court should be struck.

### 11.     Answers that Aren't Answers

There are many ways to answer an Interrogatory, and the answerer frequently provides a simple "Yes" or "No" with an explanation.  Then there are answers meant to be so evasive, that it cannot be discerned whether the answer does not know or is refusing to answer. When Defendants answer these Interrogatories with the phrase: "[Defendant] has no specific knowledge sufficient to answer this interrogatory", Defendants' inject ambiguity where information should be. *See Minnesota Mining*, 757 F.2d at 1260 ("unable to respond" as an Interrogatory response was both insufficient and sanctionable).  Defendants should clearly answer the Interrogatories.

## B.  DEFENDANT'S OBJECTIONS ARE WITHOUT MERIT

### 1.  Objections to Disclosure of Defendants' Sales Revenue Information Are Meritless.

Defendants wrongfully seek to withhold information tied to Mya Saray's damages calculations.  Trademark damages are based on three primary variables, (i) the Defendants' revenue, (ii) the Plaintiff's damages, and/or (iii) a combination of the two.

Mya Saray asks Defendants to state the Manufacturer's Suggested Retail Price ("MSRP") and sales price of the Subject Products. Interrogatory No. 11 (to Sahni and One Wholesale)' Interrogatory No. 7 (All Fun); Interrogatory No. 4 (to Hookah Hookup). This helps establish the Defendants' ideas of the inherent value of their products, as well as serving as a benchmark when a counterfeiter cannot locate its financial information – or is withheld/hidden.[6] Defendants objections should be stricken and they should be made to answer.[7]

---

[6] "[M]any counterfeiters, once given notice that their fraudulent operations have been discovered, will immediately dispose of the counterfeit goods and make it impossible for the trademark owner ever to bring them to justice."  S. Rep. No. 98-526, at 2-3 (1984)

[7] One Wholesale expressed that it would disclose its catalogues, but these catalogues will not include sales prices of actual transactions. Mya Saray asked for both, because often a distributor will provide price breaks based on volume.

Because products are not always available for sale simply because they are physically available, and also catalogues may promote products prior to their availability, Mya Saray asks Defendants the availability of the Subject Products for purchase/distribution.  Interrogatory No. 15 (to Sahni and One Wholesale)' Interrogatory No. 11 (All Fun); Interrogatory No. 10 (to Hookah Hookup).  Although Defendants opted to respond to this Interrogatory with the production of documents, Defendants cited no such documents and Mya Saray cannot discern any applicable documents.

Mya Saray asked Defendants to state their yearly gross revenue since Jan. 1, 2011.  No Defendant responded to this Interrogatory.  The size of Defendants' counterfeiting operations is an express factor in determining statutory damages; also, the completeness of a counterfeiter's records are often such that the most complete statement of income comes from their tax returns. In at least four infringement cases courts have found that a defendant's tax returns are relevant when the plaintiff asks for statutory damages. *See, Coach, Inc. v. Swap Shop, Inc.*, No. 12–60400–CIV, 2013 WL 4407064 * 3 holding that " 'Defendant's corporate federal income tax returns are relevant to the issue of statutory damages under section 504(c)(1) in a copyright infringement action.' " (quoting Quackenbush Music, Ltd. v. Alana, Inc., No. 92–10687–S, 1992 WL 439746 * 2 (D.Mass. Nov.2, 1992)); *Coach, Inc. v. Hubert Keller, Inc.*, Case No. CV411–285, 911 F.Supp.2d 1303, 1310 (S.D.Ga.2012) (recognizing that if plaintiff had invoked its right to statutory damages it would be entitled to the defendant's tax returns.); *Coach, Inc. v. Visitors Flea Mkt., LLC*, No. 6:11-CV-1905-ORL-19, 2013 WL 5770598, at *2 (M.D. Fla. Oct. 24, 2013).

Mya Saray asks for Defendants to identify the total quantity and total dollar amount of each Subject Product arranged by year to each purchaser.  Interrogatory No. 21 (to Sahni and

One Wholesale); Interrogatory No. 13 (to Hookah Hookup); Interrogatory No. 14 (to All Fun). Then Mya Saray asked for the commercial targets of these sales. Interrogatory No. 22 (to Sahni and One Wholesale); Interrogatory No. 14 (to Hookah Hookup); Interrogatory No. 15 (to All Fun).   These calculations form the heart of a counterfeit-plaintiff's damages calculations.   *See e.g. Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347 n. 26 (S.D.N.Y. 2010)("LVM *relies* upon a series of twenty-five (25) invoices from defendants purporting to show defendants' gross sales").  Defendants should be made to answer the Interrogatory absent any objections.

The damages calculation for infringement includes the total revenue less costs and deductions. 15 U.S.C. 1117(a); *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 104 (2d Cir.1999). Defendants' objections reached the zenith of absurdity when Defendants objected to the relevance[8] of a damages calculation that is *hardwired* into the Lanham Act damages statute. Interrogatory No. 23 (to Sahni and One Wholesale); Interrogatory No. 15 (to Hookah Hookup); Interrogatory No. 16 (to All Fun).  Defendants should be made to answer the Interrogatory without their outstanding objections.

Mya Saray then asked Defendants to characterize their record keeping systems. Interrogatory No. 26 (to Sahni and One Wholesale); Interrogatory No. 18 (to Hookah Hookup); Interrogatory No. 19 (to All Fun).  The sales keeping system is indicative of the ease at which records may be exported, manipulated, and examined.   All Fun answered the question in a satisfactory manner, naming the system that it used and dates of retention.   The Sahni Confederacy chose merely to name the length at which records were retained, and chastise Mya Saray for assuming that they kept records at all.  The Defendants objections should be struck and

---

[8] In an interesting twist of (uncharacteristic) evasion, All Fun answered the question in the abstract when it provided an abstract depiction of the variables of its costs and deductions rather than the specific subject product and the specific deductions/costs.  All Fun should be made to answer the Interrogatory with actual numbers rather than the variables.  Mya Saray already knows that 'costs and deductions' are 'costs and deductions.'

Defendants should be ordered to answer the Interrogatory – and All Fun should answer absent outstanding objections.

### 2. Objections to Information Related to Defendants' Sales Quantities Are Meritless.

Defendants wrongfully seek to withhold information tied to Defendants' distribution of hookah products. Mya Saray seeks information related to Defendants' sales of Defendants' hookahs generally, Defendants' sales of infringing hookahs, and Defendants' sales of Mya Saray's hookahs.

Defendants' sales of Mya Saray's hookahs are a key component of the unfair competition claims of this litigation and indicate 'intent' for trademark claims. Providing a genuine article and then substituting a spurious article is actionable as "passing off" under the Lanham Act. 4 McCarthy on Trademarks and Unfair Competition § 25:3 (4th ed.). Using a genuine good to generate interest in a spurious good indicates predatory intent, a strong indication of likelihood of confusion. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 572 (D. N.J. 2003).

Defendants' basis for withholding sales quantity information related to the sales of infringing hookahs is inexplicable. When Mya Saray sought the retailer purchasers of the Subject Products along with the product names, quantities, and dates of sale, the Defendants spewed a host of objections and refused to answer the question. Interrogatory 9 (to Sahni and One Wholesale); Interrogatory No. 5 (To Hookah Hookup). For Hookah Hookup, which is a retail store, Mya Saray simply sought the sales quantity of each Subject Product by year. Interrogatory 4 (to Hookah Hookup). This data is essential for the calculation of damages and establishing sales applicable to critical damage dates; and also mapping the geographic locations

of the damage.  See Section II.B.3.  Mya Saray asked the same question to Hookah Hookup and All Fun, but altered in scope to include sales to any entity type and with the requirement to identify the physical location of the sale.  Interrogatory 5 (to Hookah Hookup and All Fun).

Mya Saray asked Sahni and One Wholesale to identify the sales quantity of the Subject Products of this litigation. Interrogatory No. 7. Mya Saray asked All Fun and Hookah Hookup the same question, but with reference to the physical location from which sold.  Interrogatory No. 5.  The multiple unexplained objections to these Interrogatories should be overruled, including Defendants' attempts to alter the scope of the answer.

Mya Saray also asked for Defendants to describe their sales of Mya Saray's hookahs. Interrogatory No. 10 (to Sahni and One Wholesale).  The nature of 'passing off' imbues liability in a party that confuses a consumer by duping a consumer into purchasing a product that the consumer believes is a different product. When the sales of a genuine product overlap with unlawful products, unfair competition harm more likely.  *See, e.g., Thompson v. Haynes*, 305 F.3d 1369 (Fed. Cir. 2002).  Defendants should be made to answer this Interrogatory with its objections stricken.

Sales of even non-infringing hookahs are relevant to Mya Saray's damages. Significant quantities of Defendants' products infringe Mya Saray's intellectual property rights.  This makes multiple aspects of Defendants' legitimate activities relevant to this litigation, for example the proportion of unlawful-to-lawful products is an express factor of statutory damages, *Philip Morris USA Inc. v. Tammy's Smoke Shop, Inc.*, 726 F.Supp.2d 223, 224 (E.D.N.Y. 2010), the sales of lawful products may be spurred by the sales of unlawful products.

### 3.    Objections to Information Related to Defendants' Distribution Are Meritless.

Defendants wrongfully seek to withhold information tied to Defendants' distribution of hookah products.  Mya Saray asked Sahni and One Wholesale to identify the distributors and retailers to whom they distributed the Subject Products, and if to a distributor, to characterize any areas of distribution.   Interrogatory No. 8 (to Sahni and One Wholesale). Mya Saray asked Defendants to identify its distributors and retailers, along with the total quantity of Subject Products sold and the dates of sale.   Interrogatory No. 9 (to Sahni and One Wholesale); Interrogatory No. 6 (to All Fun). Wherever a trademark defendant distributes an infringing product, there is infringement *in that location*.  *See Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 413 (1916)(Confusion follows sales of an article rather than state/municipal boundaries).   Furthermore, when infringing articles are sold in competition with the lawful articles, the damages analysis differs. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed.Cir.2012)(Direct competition causes price erosion).

Mya Saray sought information on shipments of the Subject Products to the Defendants. Interrogatory No. 4 (to Sahni and One Wholesale); Interrogatory No. 3 (to Hookah Hookup and All Fun). When counterfeiting-defendants, and other intellectual property wrongdoers, have sparse records on direct sales of infringing articles,[9] it is often the case that the best source of product availability is based on shipment dates.  Patent damages are more strictly limited than trademark damages, only six years of patent damages are permitted. *Genentech, Inc. v. Insmed Inc.*, 436 F. Supp. 2d 1080, 1094 (N.D. Cal. 2006).  Because Defendants have failed to supply availability of patent infringing articles, Mya Saray's experts may need to rely on shipment documents as a secondary source of information.

---

[9] And Sahni and One Wholesale have not produced a single invoice or bill of sale to a retailer.  Hookah Hookup has produced no documents/information related to its sales or supply of hookahs.

The distribution of products throughout a region the size of the Southeast requires a substantial sales force.  Mya Saray asked Defendants to identify their sales force, their period of employment, basis of termination of relationship, and contact information.  Interrogatory No. 24 (to Sahni and One Wholesale); Interrogatory No. 16 (to Hookah Hookup) and Interrogatory No. 17 (to All Fun). The identity of Defendants' sales force is the start of the key witness list; their dates of employment indicate their familiarity with particular products and orders thereof; and their responsibilities and basis of termination indicate the likelihood of knowledge and performance in their posts.  Defendant should be made to answer this Interrogatory absent any improper objections.

**4.      Objections to Information Related to Defendants' Creation and Discovery of the Subject Products Are Meritless.**

Defendants are not manufacturers, and rely on the efforts of foreign counterfeiters to supply the Subject Products.  Defendants wrongfully seek to withhold information tied to the early stages of Defendants' decision to commercially exploit the Subject Products at all.  This includes the creation, order, discovery, and receipt of the Subject Products.  Mya Saray seeks to learn about the design, creation, and advertising of the products *that would become* the Subject Products. Defendants should be made to answer.

Mya Saray asks Sahni and One Wholesale about the proliferation of the Subject Products to them, or more specifically, the identity of the foreign counterfeiters.  Interrogatory No. 1 (to Sahni and One Wholesale).  Defendants' objections to this information should be overruled. Sahni and One Wholesale should be made to answer to Interrogatory; Defendants' reference documents, but no specific documents.   Mya Saray asks Sahni and One Wholesale about the circumstances under which they first learned of the products that would be the Subject Products.

Interrogatory No. 2 (to Sahni and One Wholesale).   Although Sahni provided a rather satisfactory answer, *i.e.*, "on Alibaba.com…," Defendants should be made to answer the Interrogatory without restraint from inapplicable objections.   When All Fun and Hookah Hookup responded to this Interrogatory, they sought to rely on document disclosures, but failed to specify any applicable documents.   Interrogatory No. 1 (to Hookah Hookup and Sahni).   Defendants should be made to answer.

Mya Saray sought information on the attributes of each Subject Product that caused Defendants to acquire each Subject Product.   Interrogatory No. 3 (to Sahni and One Wholesale); Interrogatory No. 2 (to Sahni and One Wholesale).   Defendants' objections to this information should be overruled.   No Defendant satisfactorily answered this Interrogatory – although All Fun, to its credit, seemed to be trying to answer Interrogatory.   Sahni, Hookah Hookup, and One Wholesale provided evasive answers none of which were correlated to any particular Subject Product.   All Fun provided a logical response, but failed to address any particular Subject Product.  Defendants should be made to answer.

**5.     Objections to Discovery Related to Defendants' Intent are Meritless.**

A Defendant's intent in intellectual property litigation can be a basis for determining unfair competition, likelihood of confusion, and enhanced patent damages. *Larsen v. Terk Techs. Corp.*, 151 F.3d 140, 148 (4th Cir. 1998)(Intentional copying creates a presumption of secondary meaning) *see Beer Nuts v. Clover Club Foods Co*., 805 F.2d 920 (10th Cir. 1986) (The "deliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another which in turn supports a finding of likelihood of confusion."); *Rosemount Inc v. Beckman Instruments Inc*., 727 F.2d 1540 (Fed. Cir. 1984)(Willfulness is a prominent factor in

determining patent damages).   Defendants objections to discovery responses based on intent should be overruled, and Defendants should be made to answer.

Mya Saray asked for the extent to which Defendants searched for, or considered, the intellectual property rights of others prior to commercially exploiting the Subject Products. Here, Defendant posits a conditionally meritorious objection.   A defendant may appropriately object to revealing attorney advice on the confusing similarity of trademarks or the ability to vend products notwithstanding patents; however, one cannot use an attorney opinion to support a defense unless it is revealed in discovery pursuant to a legitimate request.  I*n re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007).  Defendants may rely on attorney advice to attempt to negate willful intent and thereby waive attorney-client privilege, or Defendants may maintain the privilege, but doing so forecloses their use of such an opinion.

Mya Saray asked for any steps taken to avoid confusion between Mya Saray's products and Defendants' products.  Interrogatory No. 12 (to Sahni and one Wholesale); Interrogatory No. 8 (to All Fun) Interrogatory 7 (to Hookah Hookup). Any such evidence would shed light on distancing the likelihood of confusion between the parties' products. Defendants objections should be stricken and it should be made to answer.

All Fun is a repeat offender.  It has previously offered a counterfeit of Mya Saray hookah. Mya Saray asked All Fun to cease offering the counterfeit in 2011, and it did; but now, All Fun is offering the same counterfeit.  Mya Saray asked All Fun how any past communication from Mya Saray has influenced its decisions to provide Subject Products.  Interrogatory No. 21 (to All Fun).  All Fun's objections should be stricken and it should be made to answer.

**6.      Objections to the Attributes of the Subject Products and Information Related to Likelihood of Confusion Are Meritless**

Attributes of Defendants' Subject Product infringe Mya Saray's patents and trademarks and cause substantial confusion among consumers.  The genesis and approval of these products and their attributes are prime issues in this litigation.  The functional attributes of the Subject Products infringe Mya Saray's patents, while ornamental and design features infringe Mya Saray's trademarks and otherwise imitate Mya Saray's products unlawfully.

Defendants' Subject Products include surface designs identical to those of Mya Saray's products. Mya asked the Defendants about the Subject Product surface designs, specifically who created them, who reviewed them, the electronic file names of the master files.  Interrogatory 6 (to Sahni and One Wholesale).  These objections should be withdrawn, and Defendants should be made to answer.

Illustration No. 1 (The Source of Imitative Surface Designs)[10]

 

Mya Saray asked for Defendants to identify individuals who have knowledge of instances where defendant received communications inquiring about Mya Saray.  Interrogatory No.13 (to Sahni and One Wholesale; Interrogatory No.8 (to Hookah Hookup); Interrogatory No. 9 (to All Fun).   Mya Saray asked for all indications of actual confusion known to Defendant.

---

[10] Defendants' hookahs (example on the left) repeatedly use Mya Saray's trademarked swirl logo (Mya Saray hookah on the right).  Defendants' felt the genesis of its 'swirl' was irrelevant to this trademark litigation wherein suit over this trademark comprises an express count.

Interrogatory No. 14 (to Sahni and One Wholesale); Interrogatory No. 9 (to Hookah Hookup); Interrogatory No.10 (to All Fun). The identification of witnesses having information whereby consumers asked for Mya Saray products, complained about Mya Saray products, or where actual confusion existed between Mya Saray's products and those of the Defendants are highly probative of multiple issues in this litigation. *Crossbow, Inc. v. Dan-Dee Imports, Inc.*, 266 F. Supp. 335, 153 U.S.P.Q. 163 (S.D.N.Y. 1967)(Passing off occurs when consumers are exposed to a genuine product and then provided a spurious product); *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009)("…evidence of actual confusion is 'often paramount' in the likelihood of confusion analysis"); *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 331 (S.D.N.Y. 2011)(Receiving a competitor's mail is a strong indication of actual confusion). Retailers that ask for Mya Saray products, but receive Defendants' products were victims of unfair competition; as are consumers purchasing a Subject Product believing it to originate from Mya Saray.

As the similarity of advertising used by markholders is a factor of likelihood of confusion, Mya Saray asked about trade shows attended by the Defendants in the last four years. *George*, 575 F.3d at 393. Interrogatory No.16 (to Sahni and One Wholesale); Interrogatory No. 9 (to All Fun). Defendant opted to produce documents, but cited no applicable documents. Defendant should be made to answer this Interrogatory. Mya Saray then asked Defendants to identify any advertising that includes the Subject Products. Interrogatory No. 17 (to Sahni and One Wholesale); Interrogatory No. 11 (to Hookah Hookup); Interrogatory No.10 (to All Fun). Mya Saray then asked Defendants to identify attempts to generate publicity and notoriety based on their brands that include the Subject Products. Interrogatory No. 18 (to Sahni and One Wholesale). For both of these Interrogatories, Defendant opted to produce documents, but cited

no applicable documents.  The undersigned can locate documents seemingly responsive to these requests, but these Interrogatories should be answered without interference of inapplicable objections.

Mya Saray asked Defendants if third parties creating their marketing materials and collateral, and if so, to identify them. Interrogatory No. 19 (to Sahni and One Wholesale); Defendants on the whole provided a rather satisfactory answer set; including One Wholesale, who indicated that they do not use third party providers to create marketing.  Mya Saray only asks that the inapplicable objections be withdrawn so that the answer is unencumbered by inapplicable objections.

Mya Saray asked Defendants about any photographs that depict both a Mya Saray and Defendant product.  Interrogatory No. 27 (to Sahni and One Wholesale).  Defendants are selling knock-off hookahs that include a Mya Saray hose that bears multiple trademarks belonging to Mya Saray.  In fact, Mya Saray's trademarks are the only trademarks depicted.  Associating the trademark of a genuine product with an unmarked spurious product in a sales photograph is trademark infringement.  *Bulova Watch Co. v. Allerton Co.*, 328 F.2d 20, 22 (7th Cir. 1964). Defendants should be made to answer the Interrogatory and all objections to the same should be struck.

Defacing the trademark of product in order to dupe consumers is not merely trademark infringement, it is also criminal. Va. Code §18.2–214, 216.  Since Defendants mutilated multiple photographs to excise Mya Saray's MYA trademark from its hookahs, Mya Saray asked Defendants their motivation and means. Interrogatory No. 28 (to Sahni and One Wholesale). This raises perplexing questions regarding the maliciousness of the Defendants. Rather than simply photograph the knockoff, the Defendants go to the trouble of using complex graphics

manipulation software to 'photoshop' a picture to omit Mya Saray's trademarks, and then add Defendants' own brands.  The most logical answer that explains the necessity to depict a MYA product is that the MYA product has visual attributes that the Subzero knock-off lacks: the VENTO, because of its superior components, photographs better, the VENTO is immediately recognizable as a MYA product, etc.  Any of these options speaks ill of Defendants' intent.  This answer is certainly not that it is easier to copy and 'photoshop' a third-parties' picture of a competitor's product rather than simply photograph the knock-off on hand.  This Interrogatory resulted in a shocking amount of objections.   And if there was ever and indication that Defendants' objections were applied in a perfunctory manner, it would be that Defendants' objected to the burdensome nature of having to explain their means and reasoning for defacing the trademarks of Mya Saray and others.

Defendants also depicted Mya Saray's hookahs when attempting to publicize their own knock-offs. For example, when Defendants depict a "Subzero" hookah in their marketing materials they are really displaying a MYA VENTO hookah.  Mya Saray inquired as to the identity of any photographs that display a Mya Saray hookah labeled as a Defendant product. Interrogatory No. 29 (to Sahni and One Wholesale). As this is textbook passing off, *Zandelin v. Maxwell Bentley Mfg. Co.*, 197 F. Supp. 608, 611 (S.D.N.Y. 1961), Defendants' objections are well over the line of frivolousness.

**7.     Defendants Other Objections Are Meritless.**

Mya Saray asked Defendants to identify any individual that participated in answering the Interrogatories. Interrogatory No. 25 (to Sahni and One Wholesale); Interrogatory No. 17 (to Hookah Hookup); Interrogatory No. 18 (to All Fun).  All Fun, again, provided a satisfactory

response – but surrounded by meritless objections.  Defendants' objections should be struck and be made to answer the Interrogatory.

Mya Saray asked Defendants to identify their bases for alleging that any patent of this suit is invalid, void, or otherwise not enforceable.  Interrogatory No. 30 (to Sahni and One Wholesale); Interrogatory No. 21 (to Hookah Hookup); Interrogatory No. 22 (to All Fun).  Because invalidity and unenforceability are defenses to patent infringement, this Interrogatory is highly relevant.  Defendants' objections should be stricken and Defendants should be made to answer.

The undersigned cannot locate any corporate filing or licensure of The Hookah Hookup in any state.  Mya Saray asked for any agreement between an operator of any retail store utilizing the brand "hookah hookup" and the defendant The Hookah Hookup.  Interrogatory No. 20. (to Hookah Hookup).  The Hookah Hookup raised many objections to this Interrogatory.  These objections should be struck, and Hookah Hookup should be made to answer the Interrogatory.

Mya Saray asked Hookah Hookup and All Fun to identify any agreements that they have with any other Defendant. Interrogatory No. 19. (to Hookah Hookup); Interrogatory No. 20. (to All Fun).  Naturally the terms of any inter-party agreements would be relevant to a host of issues: shipping terms would relate to damages; indemnification would relate to a party's sense of security in providing spurious goods; and the terms of the relationship would dictate the apportionment of damages.  Defendants' objections should be struck and Defendants should be made to answer the Interrogatory.

## II.      CONCLUSION

Mya Saray asks that this Court order the Defendants' to answer Mya Saray's

Interrogatories fully and without objection, except where noted above.


Respectfully submitted,

By ____/s/_____
M. Keith Blankenship, Esq.
Attorney for Plaintiff
VSB# 70027
Da Vinci's Notebook, LLC
10302 Bristow Center Dr
No. 52
Bristow, VA 20136
703-581-9562
keith@dnotebook.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2016 I have filed electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notice of such filing to the counsel of record who are registered with the CM/ECF system.


_____/s/_____
M. Keith Blankenship